UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

## CIVIL MINUTES - GENERAL

| Case No. | EDCV 11-320 CAS (PJWx) | Date | May 21, 2012 |
|---|---|---|---|
| Title | ROBERT RIOS v. AMES TRUE TEMPER, INC., MCMASTER-CARR SUPPLY COMPANY, AND DOES 1 TO 100 | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | ANNE KIELWASSER | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Daniel Powell | Thomas Gmelich |
| | Kathryn Canale |
| | Yuk Law |

**Proceedings:**    **DEFENDANT'S MOTION FOR LEAVE TO FILE CROSS-COMPLAINT** (filed April 12, 2012)

**(IN CHAMBERS): DEFENDANT'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT AGREEMENT** (filed March 14, 2012)

## I.    INTRODUCTION AND BACKGROUND

On January 20, 2011, plaintiff Robert Rios ("plaintiff") filed the instant action against defendants Ames True Temper, Inc. ("Ames"), McMaster-Carr Supply Company ("McMaster") and Does 1 to 100 in the Riverside County Superior Court. Defendants removed the action to this Court on February 22, 2011, asserting diversity of citizenship pursuant to 28 U.S.C. § 1441 (b).

Plaintiff was a maintenance worker at the Betty Ford Center in Rancho Mirage, California. He alleges that he was injured while inflating a pneumatic tire on a garden hose cart manufactured by Ames and purchased by his employer from McMaster. Specifically, plaintiff alleges that the two-piece metal rim for the tire separated and struck him in the face causing a severe laceration, a detached retina and loss of the lens in one eye, a concussion, and a brain injury resulting in cognitive dysfunction. Plaintiff asserts a claim for products liability under theories of strict liability, negligence, and breach of warranty.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 11-320 CAS (PJWx) | Date | May 21, 2012 |
|----------|------------------------|------|--------------|
| Title | ROBERT RIOS v. AMES TRUE TEMPER, INC., MCMASTER-CARR SUPPLY COMPANY, AND DOES 1 TO 100 | | |

On March 6, 2012, at a private mediation, Ames entered into a settlement agreement with plaintiff whereby it agreed to pay plaintiff $2 million, the limit of its primary insurance policy. The settlement agreement did not provide for a release of plaintiffs' claims against McMaster. On March 14, 2012, Ames filed a motion for determination of good faith settlement, which the Court heard and took under submission on April 16, 2012.

On April 12, 2012, McMaster filed a motion for leave to file a cross-complaint against Ames for (1) equitable indemnity; (2) contractual indemnity; (3) breach of warranty; (4) breach of the implied warranty of merchantability; and (5) declaratory relief.[1] Ames filed its opposition on April 30, 2012, and McMaster filed its reply on May 7, 2012.

Ames' motion for determination of good faith settlement and McMaster's motion for leave to file a cross-complaint are presently before the Court.

## II.    DISCUSSION

### A.    Ames' Motion for Determination of Good Faith Settlement

#### 1.    Legal Standard

California Code of Civil Procedure Section 877.6 provides in pertinent part that:

(a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice in the manner provided in subdivision (b) of Section 1005.

. . .

---

[1] The deadline for the filing of cross-complaints was August 26, 2011.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 11-320 CAS (PJWx) | Date | May 21, 2012 |
|---|---|---|---|
| Title | ROBERT RIOS v. AMES TRUE TEMPER, INC., MCMASTER-CARR SUPPLY COMPANY, AND DOES 1 TO 100 | | |

(c)A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

(d)The party asserting the lack of good faith shall have the burden of proof on that issue.

Cal. Code Civ. P. 877.6.

Typically, a defendant is entitled to a finding of good faith settlement if the settlement complies with the factors set forth in Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 38 Cal. 3d 488 (Cal. 1985). In that case, the California Supreme Court set forth the following factors for evaluating a settlement: (1) rough approximation of plaintiff's total recovery and the settlor's proportionate liability; (2) the amount paid in settlement; (3) the allocation of settlement proceeds among plaintiffs; (4) a recognition that a settlor should pay less in settlement than he would if found liable at trial; (5) the financial conditions and insurance policy limits of the settling defendant; (6) the existence of collusion, fraud, tortious conduct aimed to injure the interests of the nonsettling defendants; and (7) the information available at the time of the settlement. Id. at 499. The "burden of proof [is] on the party challenging the settlement to 'demonstrate, if he can, that the settlement is so far 'out of the ballpark' in relation to [these factors] as to be inconsistent with the equitable objectives of the statute.'" Nutrition Now, Inc. v. Superior Court, 105 Cal. App. 4th 209, 213 (Cal. Ct. App. 2003) (quoting Tech-Bilt, 38 Cal. 3d at 499–500).

## 2.    Analysis

Ames argues that its settlement with plaintiff is reasonable in light of the fact that at the parties' mediation, the settlement demand to Ames was for $2 million and the entire settlement demand by plaintiff totaled $3 million—$2 million to Ames and $1 million to McMaster. Ames argues that the value of plaintiff's case does not actually approach $3 million due to plaintiff's "significant comparative fault, the low amount of medical specials [sic] and other economic damages, and his excellent recovery." Ames asserts that it has agreed to pay $2 million in an effort to "buy its peace." Accordingly,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 11-320 CAS (PJWx) | Date | May 21, 2012 |
|---|---|---|---|
| Title | ROBERT RIOS v. AMES TRUE TEMPER, INC., MCMASTER-CARR SUPPLY COMPANY, AND DOES 1 TO 100 | | |

Ames contends that the Tech-Bilt factors support a finding that its settlement with plaintiff is in good faith.

McMaster argues the settlement should be rejected because there is no basis for an independent theory of liability against McMaster, whose potential liability stems, not from its own actions, but merely from its position in the chain of distribution. McMaster argues that Ames' failure to include McMaster in the release demonstrates the absence of good faith. McMaster primarily relies on two cases in support of its position. In Long Beach Memorial Medical Ctr. v. Sup. Ct., 172 Cal. App. 4th 865, 872 (Cal. Ct. App. 2009), the court emphasized that a "key factor" in determining whether a settlement agreement should be approved is the "settling tortfeasor's potential liability for indemnity to joint tortfeasors." Id. at 873 (citing Far West Financial Corp. v. D & S Co., 46 Cal. 3d 796, n. 16 (Cal. 1988)). In Bay Development Ltd. v. Sup. Ct., 50 Cal. 3d 1012, 1034–35 (Cal. 1990), the California Supreme Court stated that in cases where the liability of the nonsettling party is wholly attributable to the contractual breach of the settling party, a settlement's failure to dismiss the nonsettling party from the lawsuit may provide sufficient basis to find the settlement not to bein good faith.

McMaster also contends that plaintiff's potential recovery is much greater than the $2 million to which Ames agreed. To this end, McMaster cites several facts:

(1) Recent verdicts and settlements in similar cases involving mild traumatic brain injury have been between $4.5 million and $29.2 million;

(2) Plaintiff is seeking damages in excess of $10 million; and

(3) Plaintiff has undergone multiple surgeries to his eye, multiple reconstructive surgeries to his face, and will require at least one additional surgery.

Finally, McMaster argues that Ames' insurance policy limits also make the settlement unfair. That is, while Ames initially represented that it had a $2 million policy prior to the parties' mediation at which the settlement agreement was reached, Ames has now disclosed that it has excess liability insurance coverage with limits of $25 million.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 11-320 CAS (PJWx) | Date | May 21, 2012 |
|---|---|---|---|
| Title | ROBERT RIOS v. AMES TRUE TEMPER, INC., MCMASTER-CARR SUPPLY COMPANY, AND DOES 1 TO 100 | | |

The Court finds that Ames settlement with plaintiff was reached in good faith. Applying the Tech-Bilt factors confirms this result.

The $2 million Ames has agreed to pay appears proportionate to Ames' potential liability for plaintiff's damages, especially when discounted by the recognition that a settlor should pay less in settlement than he would if found liable after a trial.  The determination of "good faith is not the liability figure ultimately reached at trial, but whether a reasonable person, at the time of the settlement would estimate the settling defendant's liability to be."  Barth-Wittmore Ins. v. H.R. Murphy Enters., Inc. 169 Cal. App. 3d 124, 132 (Cal. Ct. App. 1985).  Here, plaintiff's economic damages appear to be less than $250,000.[2]  Accordingly, although plaintiff's injuries are significant, the $2

---

[2] As of the date Ames filed its motion, plaintiff had not incurred out of pocket expenses for his medical care and treatment and the total billing amounted to $478,607.49.  However, this amount has been adjusted to $68,610.41, as paid by plaintiff's workers compensation carrier.  See Exh. Q. to Ames' Motion; Accounting Records of Sedgwick Claims Management for Plaintiff's Worker's Compensation claim.  Under California law, plaintiff can only recover the amount of billings actually paid by his health insurance or worker's compensation company.  Howell v. Hamilton Meats, 52 Cal. 4th 541 (Cal. 2011).

At the time of the incident, plaintiff earned approximately $40,000 per year at the Betty Ford Center.  Plaintiff receives workers' compensation benefits of approximately $2,100, and no lien has been asserted by the worker's compensation carrier such that plaintiff's damages due to lost income is approximately $16,000 per year.  Plaintiff was 61 years old at the time of the incident and testified that he would not have retired until he was 72 or 73.  Assuming both that a jury would find that plaintiff would continue working until that age and that plaintiff would not be able to mitigate his damages by returning to work, plaintiff's damages due to lost wages would be approximately $192,000 ($16,000 per year for 12 years).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 11-320 CAS (PJWx) | Date | May 21, 2012 |
|---|---|---|---|
| Title | ROBERT RIOS v. AMES TRUE TEMPER, INC., MCMASTER-CARR SUPPLY COMPANY, AND DOES 1 TO 100 | | |

million payment from Ames provides plaintiff a substantial payment to cover his non-economic damages.[3]

Next, although Ames has excess insurance coverage in the amount of $25 million, the limits of its primary insurance policy is $2 million. Thus, the settlement represents the full amount of Ames' primary insurance policy.

Finally, there does not appear to have been collusion, fraud, or tortious conduct aimed to injure the McMaster's interests. While the California Court of Appeal has held that a "key factor is the settling tortfeasor's potential liability for indemnity to joint tortfeasors," Long Beach Memorial Medical Ctr., 172 Cal. App. 4th at 873, the California Supreme Court has expressly "reject[ed] the suggestion that a proposed settlement agreement may never be found to constitute a good faith settlement unless it provides for the total dismissal of any cause of action as to which a nonsettling defendant claims to be only vicariously liable." Far West Financial Corp., 46 Cal. 3d 796, n. 15. The California Supreme Court has further stated that "[w]e believe the trial court which presides over the good faith settlement hearing is in the best position to determine based on the circumstances of the particular case, whether the terms of a proposed settlement are unfair to a nonsettling defendant who claims that its liability is only vicarious in nature." Id. Accordingly, it is clear that a settlement may be found to be in good faith even where it does not provide for the discharge of claims against a nonsettling defendant that claims to be only vicariously liable. Here, McMaster fails to set forth any evidence suggesting that Ames' settlement agreement with plaintiff, which was reached through arms length negotiations with an independent mediator, is somehow tainted by bad faith.[4]

---

[3] The Court rejects McMaster's argument that the Ames' settlement with plaintiff in this case was unreasonable based on settlement agreements reached by Ames' counsel in other personal injury cases. This is so because the Tech-Bilt factors are to be applied on a case-by-case bases because each case has a different set of circumstances that must be considered in determining whether a good faith settlement has been reached.

[4] Long Beach Memorial Medical Ctr, upon which McMaster relies, is factually distinguishable from this case. In that case, the plaintiff sued a hospital, the employer of her treating nurse, and several physicians for negligence when the delivery of the her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 11-320 CAS (PJWx) | Date | May 21, 2012 |
|----------|------------------------|------|--------------|
| Title | ROBERT RIOS v. AMES TRUE TEMPER, INC., MCMASTER-CARR SUPPLY COMPANY, AND DOES 1 TO 100 | | |

### B.     McMaster's Motion for Leave to File Cross-Complaint

#### 1.     Legal Standard

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order shall be modified "only for good cause."  Fed. R. Civ. P 16(b)(4).  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).  Accordingly, while the court may consider the "existence or degree of prejudice" to the opposing party, the focus

---

baby resulted in neurological damage to the child.  The physicians moved for a determination that their separate settlement agreement, by which they agreed to pay the plaintiff $200,000, was reached in good faith.  The court denied the physician's request, noting that approximately 2 weeks before the physicians filed their motion, counsel for all parties had discussed a proposal whereby the hospital, the nursing company, and the physicians would pay a global settlement of $7.5 million, with the physicians paying $1.5 million of that amount.  The court found significant that the hospital and nursing company did not learn of the physician's $200,000 settlement until mere hours after they themselves had agreed to the proposed $7.5 million settlement plan.  Long Beach Memorial Medical Ctr., 172 Cal. App. 4th at 871.  The court reasoned that the physicians were merely trying to avoid paying the $1.5 million which had been discussed in the prior settlement plan, and which the "physicians' own counsel effectively admitted during settlement discussions that [the physicians'] fair share of the liability was around $1.5 million."  Id. at 874.  By contrast, no such evidence of bad faith is present here.

McMaster's reliance on Bay Development Ltd., 50 Cal. 3d 1012, is similarly misplaced.  While the California Supreme Court noted in that case that a trial court may decline to find a settlement in good faith where the defendant's liability to the plaintiff "is wholly attributable to the settling defendant's contractual breach," Bay Development Ltd., 50 Cal. 3d at 1034, McMaster has presented no evidence of any such breach of contract by Ames.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    0

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 11-320 CAS (PJWx) | Date | May 21, 2012 |
|----------|------------------------|------|--------------|
| Title | ROBERT RIOS v. AMES TRUE TEMPER, INC., MCMASTER-CARR SUPPLY COMPANY, AND DOES 1 TO 100 | | |

of the court's inquiry is upon the moving party's explanation for failure to timely move for leave to amend.  Id.

### 2.    Analysis

McMaster asserts that subsequent to the August 26, 2011 deadline for filing cross-complaints, it "learned facts making clear that it has a complete right to be indemnified by Ames" should McMaster be held liable for distributing the product that injured plaintiff.  McMaster argues that there is good cause to allow the filing of the cross-complaint because the proposed amendment does not add new parties or change the nature or length of trial and because McMaster would be prejudiced if it is not allowed to seek indemnification from Ames in this action.

Ames argues that McMaster's motion should be denied because it contains no justification for McMaster's undue delay.  In this respect, Ames argues that while the motion is ostensibly based on information learned after the August 26, 2011 deadline to file new pleadings, McMaster fails to specify what particular information it learned that prevented it from filing its cross-complaint in a timely manner.  Ames also argues that it would be unfairly prejudiced if the Court were to grant McMaster's motion because Ames has already settled with plaintiff and has been dismissed from this action

The Court finds McMaster has failed to establish good cause for its delay in bringing this motion.  Although McMaster bases its motion on events which purportedly occurred after the August 26, 2011 deadline for filing cross-complaints, McMaster neglects to set forth a single specific fact that it learned after the deadline or exactly when such facts were ascertained.[5]

Further, due to McMaster's substantial and inexplicable delay in bringing this motion, Ames would be unfairly prejudiced were the Court to grant the motion.  The discovery cut-off in this matter was April 24, 2012.  McMaster's late filing has therefore

---

[5] Indeed, that McMaster attempted to tender its defense to Ames in February 2011 belies McMaster's contention that it was unaware of potential claims for indemnity against Ames.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 11-320 CAS (PJWx) | Date | May 21, 2012 |
|---|---|---|---|
| Title | ROBERT RIOS v. AMES TRUE TEMPER, INC., MCMASTER-CARR SUPPLY COMPANY, AND DOES 1 TO 100 | | |

precluded Ames from doing any discovery with respect to McMaster's proposed cross-claims.  Thus, the Court rejects McMaster's contention that Ames would not suffer any prejudice simply because the proposed cross-complaint does not add new parties or change the nature or length of trial.

**III.    CONCLUSION**

In accordance with the foregoing, the Court hereby GRANTS Ames' motion for determination of good faith settlement agreement.  Pursuant to California Code of Civil Procedure Section 877.6(c), McMaster is hereby precluded from pursuing any cross-claim against Ames based on a theory of equitable indemnity.  The Court hereby DENIES McMaster's motion for leave to file a cross-complaint.

IT IS SO ORDERED.

|  | 00 | : | 05 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |